**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| GLOBALFOUNDRIES U.S. INC. ) <br><br> Plaintiff, ) <br><br> v. ) <br><br> GOOGLE, LLC ) <br><br> Defendant. ) | **Case No. 6:19-cv-00497** <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Globalfoundries U.S. Inc. ("Globalfoundries" or "Plaintiff") brings this patent infringement action against Defendant Google, LLC ("Google" or "Defendant") as follows:

### NATURE OF THE ACTION

1.      This is a civil action for infringement of United States Patent Nos. 8,581,348 ("'348 patent"), 9,355,910 ("'910 patent"), 8,598,633 ("'633 patent"), 6,518,167 ("'167 patent"), and 8,039,966 ("'966 patent") (collectively, the "Asserted Patents") under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

### THE PARTIES

2.      Plaintiff Globalfoundries U.S. Inc. is a Delaware corporation with its principal place of business at 2600 Great America Way, Santa Clara, California 95054.

3.      Defendant Google, LLC is a Delaware corporation with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043.

## JURISDICTION AND VENUE

4.     The Court has subject matter jurisdiction over these claims under 28 U.S.C. §§ 1331 and 1338(a) and the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

5.     The Court has personal jurisdiction over Google consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute.  On information and belief, Google has regularly and systematically transacted business in Texas, directly or through affiliates, subsidiaries, or intermediaries, and/or committed acts of patent infringement in Texas as alleged more particularly below.  Google has also placed integrated circuits using TSMC's 28 nanometer and smaller technology[1] and products containing these integrated circuits (the "Accused Products") into the stream of commerce by shipping Accused Products into Texas, shipping Accused Products knowing that those products would be shipped into Texas, and/or shipping Accused Products knowing that these Accused Products would be incorporated into other Accused Products that would be shipped into Texas.  Google has an office at 500 W 2nd Street, Austin, Texas 78701 within this district.  On information and belief, Google engages in engineering and marketing activities relating to the Accused Products.  The Court therefore has both general and specific personal jurisdiction over Google.

---

[1] TSMC 28 nanometer and smaller technology includes TSMC's 28 nanometer technology (including TSMC's High-k Metal Gate gate-last technology and high-performance compact technology) ("28 Nanometer"), TSMC's 22 nanometer technology (including TSMC's 22 nanometer ultra-low power, 22 nanometer ultra-low leakage, and 22 nanometer ultra-low leakage static random access memory technologies) ("22 Nanometer"), TSMC's 20 nanometer technology ("20 Nanometer"), TSMC's 16/12 nanometer technology (including TSMC's 16 nanometer Fin Field Effect Transistor ("FinFET") process, 16 nanometer FinFET Plus process, 16 nanometer FinFET Compact Technology, and 12 nanometer FinFET Compact Technology) ("16 Nanometer"), TSMC's 10 nanometer technology (including TSMC's 10 nanometer FinFET process) ("10 Nanometer"), TSMC's 7 nanometer technology (including TSMC's 7 nanometer FinFET process) ("7 Nanometer").  Globalfoundries reserves the right to accuse any forthcoming TSMC technology, such as TSMC's 7 nanometer extreme ultraviolet lithography technology and TSMC's 5 nanometer technology.

6.     Venue is proper in this district under 28 U.S.C. § 1400(b) because Google has a regular and established place of business in this district and has committed acts of infringement in this district.

## FACTUAL BACKGROUND

7.     Globalfoundries is a U.S. company with manufacturing facilities that use and develop some of the world's most advanced semiconductor devices available today.  Building on IBM's world-class semiconductor technology heritage, Globalfoundries, the acquirer of IBM's semiconductor division, has been accredited as a Category 1A Microelectronics Trusted Source for fabrication, design, and testing of microelectronics by the U.S. Department of Defense (DOD).[2] Globalfoundries' East Fishkill, New York facility is currently the most advanced Trusted Foundry, and as such is the only facility of its kind that can provide certain advanced circuits to satisfy the DOD's requirements.  As the second-largest foundry in the world and the only advanced Trusted Foundry, Globalfoundries is uniquely equipped to efficiently and quickly meet the DOD's advanced and highly classified manufacturing and production needs—and is also equipped to do the same for its private-sector clients.

8.     Globalfoundries is the most advanced pure-play foundry in the U.S. and Europe, and employs thousands of people in the U.S. and worldwide.  While other companies were abandoning semiconductor manufacturing in the U.S., Globalfoundries bucked this trend by investing billions of dollars on advanced technology and research in the United States. Globalfoundries originated from another leading U.S. semiconductor company, Advanced Micro Devices' semiconductor manufacturing arm in 2009 and expanded globally through acquisition

---

[2] "Aerospace and Defense," https://www.globalfoundries.com/market-solutions/aerospace-and-defense.

and organic investment.  Its largest expenditure by far is its $15 billion organic U.S. investment in its leading-edge, 300 acre facility known as Fab 8 in Malta, New York.  Globalfoundries broke ground for that state of the art facility in 2009 and produces leading edge technology from that location to customers worldwide.  A major U.S. acquisition took place in 2015 when Globalfoundries acquired IBM's microelectronics facilities and personnel in Burlington, Vermont and East Fishkill, New York—facilities that became Fab 9 and Fab 10, respectively. Globalfoundries acquired not just IBM's facilities and personnel, but also the fruits of IBM's decades of industry-leading investment in U.S. semiconductor fabrication capacity and technology.  Specifically, Globalfoundries obtained 16,000 IBM patents and applications (including the '497 and '966 patents asserted in this action); numerous world-class technologists; decades of experience and expertise in semiconductor development, device expertise, design, and manufacturing; and an expanded manufacturing footprint.  The acquisition cemented Globalfoundries' role as a global leader in world-class semiconductor manufacturing and advanced process technologies.[3]

9.    Globalfoundries' U.S. manufacturing facilities in Burlington, Vermont; East Fishkill, New York; and Malta, New York use and develop some of the most advanced process nodes and differentiated technologies (inclusive of its 12/14nm FinFET, RF and Silicon Photonics technology solutions) available today.  Fab 8 is a leading fabrication facility for advanced manufacturing in the U.S., with 40,875 square meters of cleanroom space and continued expansion, and over 3,000 total employees as of June 2019.  The current capital investment for the Fab 8 campus stands at more than $15 billion, making Fab 8 the largest public-private sector

---

[3]    "Globalfoundries Completes Acquisition of IBM Microelectronics Business," https://www.globalfoundries.com/news-events/press-releases/globalfoundries-completes-acquisition-of-ibm-microelectronics-business.

industrial investment in New York State's history.  The significance of this investment and its importance to advanced manufacturing in the U.S. have been recognized by top government officials, including by the President of the U.S. during a 2012 visit to New York hosted in part by Globalfoundries.[4]

10.     Globalfoundries' investment from the Champlain Valley through the Hudson Valley makes it the spine of the Northeast's Tech Valley.  Three out of Globalfoundries' five fabs are in the U.S., but investment does not stop at its manufacturing capacity.  Globalfoundries' manufacturing footprint is supported by facilities for research, development, sales, and design enablement located near hubs of semiconductor activity, including in Santa Clara, California; Dallas, Texas; Austin, Texas; Rochester, Minnesota; Endicott, New York; and Raleigh, North Carolina.  Of its 16,000 employees worldwide, approximately 7,200 are employed in the U.S.

11.     Google is a technology company that, among other things, markets and sells products that incorporate integrated circuits manufactured by Taiwan Semiconductor Manufacturing Company Ltd. ("TSMC").  Unlike Globalfoundries, TSMC has taken a different approach and has decided to simply use Globalfoundries' patented inventions without payment or permission.  TSMC is a competing semiconductor foundry with manufacturing facilities located primarily in Hsinchu, Taiwan.  TSMC has recently expressed an interest in building a new manufacturing facility in the U.S., but has not reported any tangible steps towards implementing its ostensible interest.  In contrast, TSMC completed building the most advanced manufacturing facility of its kind in mainland China last year.  By bringing advanced 16nm FinFet to China, TSMC has positioned itself to benefit further from the shift in global supply chains out of the U.S.

---

[4]  "Globalfoundries Welcomes President Barack Obama to NY's Capital Region," https://blog.globalfoundries.com/globalfoundries-welcomes-president-barack-obama-to-nys-capital-region/.

and Europe into Greater China.  TSMC develops, manufactures, imports, and sells for importation into the U.S. semiconductor devices, including to the Defendant.  But TSMC does these things on the back of Globalfoundries, using Globalfoundries' patented technologies to make its products. Indeed, although its infringing chips have flooded the U.S. market, it appears that TSMC has attempted to avoid being subject to patent infringement allegations in the U.S. through creative legal and tax structuring.  As set forth below, the Accused Products incorporate, without any license from Globalfoundries, many technologies developed by Globalfoundries and protected by patents owned by Globalfoundries.  TSMC's, and/or its customers', importation of infringing articles into the U.S. from Greater China and elsewhere abroad directly harms Globalfoundries and its billions in U.S. investments in manufacturing.  Globalfoundries respectfully seeks relief from this Court for Defendant's infringement.

### THE ASSERTED PATENTS

12.     The '348 patent is entitled "Semiconductor device with transistor local interconnects," and issued on November 12, 2013, to inventors Mahbub Rashed, Steven Soss, Jongwook Kye, Irene Y. Lin, James Benjamin Gullette, Chinh Nguyen, Jeff Kim, Marc Tarabbia, Yuansheng Ma, Yunfei Deng, Rod Augur, Seung-Hyun Rhee, Scott Johnson, Subramani Kengeri, and Suresh Venkatesan.  Globalfoundries owns the entire right, title, and interest in and to the '348 patent.  A copy of the '348 patent is attached to this Complaint as Exhibit A.

13.     The '910 patent is entitled "Semiconductor device with transistor local interconnects," and issued on May 31, 2016 to inventors Mahbub Rashed, Irene Y. Lin, Steven Soss, Jeff Kim, Chinh Nguyen, Marc Tarabbia, Scott Johnson, Subramani Kengeri, and Suresh Venkatesan.  Globalfoundries owns the entire right, title, and interest in and to the '910 patent.  A copy of the '910 patent is attached to this Complaint as Exhibit B.

14.     The '633 patent is entitled "Semiconductor device having contact layer providing electrical connections," and issued on December 3, 2013 to inventors Marc Tarabbia, James B. Gullette, Mahbub Rashed, David S. Doman, Irene Y. Lin, Ingolf Lorenz, Larry Ho, Chinh Nguyen, Jeff Kim, Jongwook Kye, Yuansheng Ma, Yunfel Deng, Rod Augur, Seung-Hyun Rhee, Jason E. Stephens, Scott Johnson, Subramani Kengeri, and Suresh Venkatesan.  Globalfoundries owns the entire right, title, and interest in and to the '633 patent.  A copy of the '633 patent is attached to this Complaint as Exhibit C.

15.     The '167 patent is entitled "Method of forming a metal or metal nitride interface layer between silicon nitride and copper," and issued on February 11, 2003 to inventors Lu You, Matthew S. Buynoski, Paul R. Besser, Jeremias D. Romero, Pin-Chin Connie Wang, and Minh Q. Tran.  Globalfoundries owns the entire right, title, and interest in and to the '167 patent.  A copy of the '167 patent is attached to this Complaint as Exhibit D.

16.     The '966 patent is entitled "Structures of and methods and tools for forming in-situ metallic/dielectric caps for interconnects," and issued on October 18, 2011 to inventors Chih-Chao Yang and Chao-Kun Hu.  Globalfoundries owns the entire right, title, and interest in and to the '966 patent.  A copy of the '966 patent is attached to this Complaint as Exhibit E.

**CLAIMS FOR PATENT INFRINGEMENT**

17.     The allegations provided below are exemplary and without prejudice to Globalfoundries' infringement contentions.  In providing these allegations, Globalfoundries does not convey or imply any particular claim constructions or the precise scope of the claims. Globalfoundries' claim construction contentions regarding the meaning and scope of the claim terms will be provided under the Court's scheduling order.

18.     As detailed below, each element of at least one claim of each of the Asserted Patents is literally present in the Accused Products, or is literally practiced by the process through which each of the Accused Products is made.  To the extent that any element is not literally present or practiced, each such element is present or practiced under the doctrine of equivalents.

## COUNT I
## INFRINGEMENT OF THE '348 PATENT

19.     Globalfoundries incorporates by reference the allegations set forth in paragraphs 1 through 18 as though fully set forth herein.

20.     On information and belief, Google has infringed and continues to infringe and/or has induced infringement of one or more claims of the '348 patent, including at least claim 1, literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, integrated circuits manufactured by TSMC using, for example, TSMC's 16 Nanometer technology and products containing these integrated circuits (collectively, the "'348 Accused Products"), in violation of 35 U.S.C. § 271.  The '348 Accused Products include at least Google's Edge TPU development board sold under the Coral Brand, and its edge TPU fabricated using, for example, TSMC's 16 Nanometer process.

21.     On information and belief, Google has directly infringed and continues to infringe one or more claims of the '348 patent, including at least claim 1, literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering to sell in the United States, without authority or license, '348 Accused Products, in violation of 35 U.S.C. § 271(a).  On information and belief, Google imports '348 Accused Products into the United States for sales and distribution to customers located in the United States.  On information and belief, Google uses the '348 Accused Products through at least testing, evaluations, and

development.  On information and belief, Google offers for sale and/or sells '348 Accused

Products in the United States.  For example, Google maintains the coral.withgoogle.com website

where it provides links to purchase the '348 Accused Products.  This website provides links to

resellers, such as Mouser Electronics, Inc., where customers can purchase the '348 Accused

Products.

22.     The '348 Accused Products meet all the limitations of at least claim 1 of the '348

patent.  Specifically, claim 1 of the '348 patent claims a semiconductor device comprising: a

semiconductor substrate; a first transistor and a second transistor formed on said semiconductor

substrate; each of said transistors comprising a source, a drain, and a gate; a CA layer electrically

connected to at least one of said source or said drain of said first transistor; and a CB layer

electrically connected to both of said gates of said transistors and said CA layer.

23.     The '348 Accused Products are semiconductor devices.  Each is an integrated

circuit fabricated using, for example, TSMC's 16 Nanometer semiconductor process.

24.     The '348 Accused Products have a semiconductor substrate.  Each is an integrated

circuit fabricated using, for example, TSMC's 16 Nanometer semiconductor process such that the

circuit's structures are fabricated on top of a semiconductor substrate.

25.     The '348 Accused Products have a first transistor and a second transistor formed

on said semiconductor substrate.  Each is an integrated circuit fabricated using, for example,

TSMC's 16 Nanometer semiconductor process such that at least two transistors are formed on the

semiconductor substrate.

26.     In the '348 Accused Products, each of the said transistors comprise a source, a

drain, and a gate.  Each is an integrated circuit fabricated using, for example, TSMC's 16

Nanometer semiconductor process such that at least two transistors are formed on the semiconductor substrate, where each transistor has a source, a drain, and a gate.

27.     The '348 Accused Products have a CA layer electrically connected to at least one of said source or said drain of said first transistor.  Each includes, for example, SRAM cells made up of multiple transistors.  The SRAM cells are fabricated with a local interconnect layer that electrically connects to either the source or drain of a first transistor.

28.     The '348 Accused Products have a CB layer electrically connected to both of said gates of said transistors and said CA layer.  Each includes, for example, SRAM cells made up of multiple transistors.  The SRAM cells are fabricated with a local interconnect layer that electrically connects the gate of the first transistor, the gate of the second transistor, and another local interconnect layer.

29.     On information and belief, Google actively, knowingly, and intentionally induces infringement of one or more claims of the '348 patent under 35 U.S.C. § 271(b) by actively encouraging others to import into the United States, and/or make, use, sell, and/or offer to sell in the United States, '348 Accused Products or products containing the infringing semiconductor components of the '348 Accused Products.  For example, Google actively promotes the sale, use, and importation of the '348 Accused Products in marketing materials, technical specifications, data sheets, web pages on its website (e.g., coral.withgoogle.com), news and announcements, training tutorials, code examples, development and design tools, and through its sales and distribution channels that encourage infringing uses, sales, offers to sell, and importation of the '348 Accused Products.  On information and belief, Google supplies customers with '348 Accused Products so that they may be used, sold, or offered for sale by those customers.  For example, Google provides links to sellers of its products, such as Mouser Electronics, Inc., on its website.

30.     By at least August 26, 2019, Globalfoundries disclosed, by sending a letter and filing this Complaint, the existence of the '348 patent and identified at least some of Google's and others' activities that infringe the '348 patent.   Thus, based on this disclosure, Google had knowledge of the '348 patent and that its activities infringe the '348 patent since at least August 26, 2019.  Based on Globalfoundries' disclosures, Google has also known or should have known since at least August 26, 2019 that its customers, distributors, and other purchasers of the '348 Accused Products are infringing the '348 patent at least because Google has known that it is infringing the '348 patent.

31.     Other entities directly infringe the '348 patent by using, offering to sell, and/or selling the '348 Accused Products in the United States and by importing the '348 Accused Products into the United States.   For example, Mouser Electronics, Inc. has infringed and continues to infringe one or more claims of the '348 patent, including at least claim 1, literally or under the doctrine of equivalents at least under 35 U.S.C. § 271(a) by importing into the United States, and/or selling, and/or offering for sale in the United States, without any authority or license, at least some '348 Accused Products.

32.     Globalfoundries has suffered and continues to suffer damages as a result of Defendant's infringement of the '348 patent.

33.     Defendant's continuing acts of infringement are a basis of consumer demand for the '348 Accused Products.  Defendant's continuing acts of infringement are therefore irreparably harming and causing damage to Globalfoundries, for which Globalfoundries has no adequate remedy at law, and will continue to suffer such irreparable injury unless Defendant's continuing acts of infringement are enjoined by the Court.  The hardships that an injunction would impose are

less than those faced by Globalfoundries should an injunction not issue.  The public interest would be served by issuance of an injunction.

**COUNT II**
**INFRINGEMENT OF THE '910 PATENT**

34.    Globalfoundries incorporates by reference the allegations set forth in paragraphs 1 through 33 as though fully set forth herein.

35.    On information and belief, Google has infringed and continues to infringe and/or has induced infringement of one or more claims of the '910 patent, including at least claim 1, literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, integrated circuits manufactured by TSMC using, for example, TSMC's 16 Nanometer technology and products containing these integrated circuits (collectively, the "'910 Accused Products"), in violation of 35 U.S.C. § 271.  The '910 Accused Products include at least Google's Edge TPU development board sold under the Coral Brand, and its edge TPU fabricated using, for example, TSMC's 16 Nanometer process.

36.    On information and belief, Google has directly infringed and continues to infringe one or more claims of the '910 patent, including at least claim 1, literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering to sell in the United States, without authority or license, '910 Accused Products, in violation of 35 U.S.C. § 271(a).  On information and belief, Google imports '910 Accused Products into the United States for sales and distribution to customers located in the United States.  On information and belief, Google uses the '910 Accused Products through at least testing, evaluations, and development.  On information and belief, Google offers for sale and/or sells '910 Accused Products in the United States.  For example, Google maintains the coral.withgoogle.com website

where it provides links to purchase the '910 Accused Products. This website provides links to resellers, such as Mouser Electronics, Inc., where customers can purchase the '910 Accused Products.

37. The '910 Accused Products meet all the limitations of at least claim 1 of the '910 patent. Specifically, claim 1 of the '910 patent claims a semiconductor device comprising: a semiconductor substrate; a first transistor and a second transistor disposed on said substrate; each of said transistors comprising a source, a drain, and a gate; a first CB layer electrically connected to said gate of said first transistor; a second CB layer electrically connected to said gate of said second transistor; and a CA layer extending longitudinally between a first end and a second end; wherein said first CB layer is electrically connected to said first end of said CA layer; said second CB layer is electrically connected to said second end of said CA layer; said gate of said first transistor extends longitudinally along a first line and said gate of said second transistor extends longitudinally along a second line, wherein said first and second lines are generally parallel to one another and spaced apart from one another; and said CA layer extends generally parallel to said lines and generally perpendicular to said first CB layer and said second CB layer; and wherein said first CB layer extends longitudinally beyond said gate of said first transistor and/or said second CB layer extends longitudinally beyond said gate of said second transistor.

38. The '910 Accused Products are semiconductor devices. Each is an integrated circuit fabricated using, for example, TSMC's 16 Nanometer semiconductor process.

39. The '910 Accused Products have a semiconductor substrate. Each is an integrated circuit fabricated using, for example, TSMC's 16 Nanometer semiconductor process such that the circuit's structures are fabricated on top of a semiconductor substrate.

40.     The '910 Accused Products have a first transistor and a second transistor disposed on said substrate.  Each is an integrated circuit fabricated using, for example, TSMC's 16 Nanometer semiconductor process such that at least two transistors are formed on the semiconductor substrate.

41.     In the '910 Accused Products, each of the said transistors comprise a source, a drain, and a gate.  Each is an integrated circuit fabricated using, for example, TSMC's 16 Nanometer semiconductor process such that at least two transistors are formed on the substrate, where each transistor has a source, a drain, and a gate.

42.     The '910 Accused Products have a first CB layer electrically connected to said gate of said first transistor.  Each includes, for example, SRAM cells made up of multiple transistors. The SRAM cells are fabricated with a local interconnect layer that electrically connects to the gate of a first transistor.

43.     The '910 Accused Products have a second CB layer electrically connected to said gate of said second transistor.  Each includes, for example, SRAM cells made up of multiple transistors.  The SRAM cells are fabricated with another local interconnect layer that electrically connects to the gate of a second transistor.

44.     The '910 Accused Products have a CA layer extending longitudinally between a first end and a second end; wherein said first CB layer is electrically connected to said first end of said CA layer; said second CB layer is electrically connected to said second end of said CA layer. Each includes, for example, SRAM cells made up of multiple transistors.  The SRAM cells are fabricated with a layer having a first end and a second end that extends longitudinally such that its ends electrically connect the first and second local interconnect layers.

45.     In the '910 Accused Products, the gate of said first transistor extends longitudinally along a first line and said gate of said second transistor extends longitudinally along a second line, wherein said first and second lines are generally parallel to one another and spaced apart from one another.  Each includes, for example, SRAM cells made up of multiple transistors.  The SRAM cells are fabricated such that the first and second transistors include gates that extend longitudinally along lines that are generally parallel to one another and spaced apart.

46.     In the '910 Accused Products, the CA layer extends generally parallel to said lines and generally perpendicular to said first CB layer and said second CB layer.  Each includes, for example, SRAM cells made up of multiple transistors.  The SRAM cells are fabricated such that a local interconnect layer is parallel to the lines on which the gates of the first and second transistors lie, and the local interconnect layer is perpendicular to the first and second local interconnect layers described in ¶¶ 42 and 43.

47.     In the '910 Accused Products, one or both of the CB layers extends longitudinally beyond the respective gates of the first and second transistors.  Each includes, for example, SRAM cells made up of multiple transistors.  The SRAM cells are fabricated such that the local interconnect layers described in ¶¶ 42 and 43 extend longitudinally beyond the gates of a first and/or second transistor.

48.     On information and belief, Google actively, knowingly, and intentionally induces infringement of one or more claims of the '910 patent under 35 U.S.C. § 271(b) by actively encouraging others to import into the United States, and/or make, use, sell, and/or offer to sell in the United States, '910 Accused Products or products containing the infringing semiconductor components of the '910 Accused Products.  For example, Google actively promotes the sale, use, and importation of the '910 Accused Products in marketing materials, technical specifications,

data sheets, web pages on its website (e.g., coral.withgoogle.com), news and announcements, training tutorials, code examples, development and design tools, and through its sales and distribution channels that encourage infringing uses, sales, offers to sell, and importation of the '910 Accused Products.  On information and belief, Google supplies customers with '910 Accused Products so that they may be used, sold, or offered for sale by those customers.  For example, Google provides links to sellers of its products, such as Mouser Electronics, Inc., on its website.

49.    By at least August 26, 2019, Globalfoundries disclosed, by sending a letter and filing this Complaint, the existence of the '910 patent and identified at least some of Google's and others' activities that infringe the '910 patent.  Thus, based on this disclosure, Google had knowledge of the '910 patent and that its activities infringe the '910 patent since at least August 26, 2019.  Based on Globalfoundries' disclosures, Google has also known or should have known since at least August 26, 2019 that its customers, distributors, and other purchasers of the '910 Accused Products are infringing the '910 patent at least because Google has known that it is infringing the '910 patent.

50.    Other entities directly infringe the '910 patent by using, offering to sell, and/or selling the '910 Accused Products in the United States and by importing the '910 Accused Products into the United States.  For example, Mouser Electronics, Inc. has infringed and continues to infringe one or more claims of the '910 patent, including at least claim 1, literally or under the doctrine of equivalents at least under 35 U.S.C. § 271(a) by importing into the United States, and/or selling, and/or offering for sale in the United States, without any authority or license, at least some '910 Accused Products.

51.    Globalfoundries has suffered and continues to suffer damages as a result of Defendant's infringement of the '910 patent.

52.     Defendant's continuing acts of infringement are a basis of consumer demand for the '910 Accused Products.  Defendant's continuing acts of infringement are therefore irreparably harming and causing damage to Globalfoundries, for which Globalfoundries has no adequate remedy at law, and will continue to suffer such irreparable injury unless Defendant's continuing acts of infringement are enjoined by the Court.  The hardships that an injunction would impose are less than those faced by Globalfoundries should an injunction not issue.  The public interest would be served by issuance of an injunction.

**COUNT III**
**INFRINGEMENT OF THE '633 PATENT**

53.     Globalfoundries incorporates by reference the allegations set forth in paragraphs 1 through 52 as though fully set forth herein.

54.     On information and belief, Google has infringed and continues to infringe and/or has induced infringement of one or more claims of the '633 patent, including at least claim 1, literally or under the doctrine of equivalents, by importing into the United States and/or using and/or selling and/or offering for sale in the United States, without authority or license, integrated circuits manufactured by TSMC using, for example, TSMC's 16 Nanometer technology and products containing these integrated circuits (collectively, the "'633 Accused Products"), in violation of 35 U.S.C. § 271.  The '633 Accused Products include at least Google's Edge TPU development board sold under the Coral Brand, and its edge TPU fabricated using, for example, TSMC's 16 Nanometer process.

55.     On information and belief, Google has directly infringed and continues to infringe one or more claims of the '633 patent, including at least claim 1, literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering to sell in the United States, without authority or license, '633 Accused Products, in violation of 35

U.S.C. § 271(a).  On information and belief, Google imports '633 Accused Products into the United States for sales and distribution to customers located in the United States.  On information and belief, Google uses the '633 Accused Products through at least testing, evaluations, and development.  On information and belief, Google offers for sale and/or sells '633 Accused Products in the United States.  For example, Google maintains the coral.withgoogle.com website where it provides links to purchase the '633 Accused Products.  This website provides links to resellers, such as Mouser Electronics, Inc., where customers can purchase the '633 Accused Products.

56.     The '633 Accused Products meet all the limitations of at least claim 1 of the '633 patent.  Specifically, claim 1 of the '633 patent claims a semiconductor device comprising: a semiconductor substrate having a diffusion region; a transistor formed within said diffusion region and comprising a source, a drain, and a gate; a metal layer including a power rail disposed outside said diffusion region and a pin layer extending from said diffusion region to outside said diffusion region; a contact layer disposed above said substrate and below said metal layer; and a via disposed between said contact layer and said power rail to electrically connect said contact layer to said power rail; and wherein said contact layer includes a first length disposed outside said diffusion region and a second length extending from said first length into said diffusion region and electrically connected to said transistor.

57.     The '633 Accused Products are semiconductor devices.  Each is an integrated circuit fabricated using, for example, TSMC's 16 Nanometer semiconductor process.

58.     The '633 Accused Products have a semiconductor substrate having a diffusion region.  Each is an integrated circuit fabricated using, for example, TSMC's 16 Nanometer

semiconductor process such that the circuit's structures are fabricated on top of a semiconductor substrate. The substrate of each has a diffusion region.

59. The '633 Accused Products have a transistor formed within the diffusion region and comprising a source, a drain, and a gate. Each is an integrated circuit fabricated using, for example, TSMC's 16 Nanometer semiconductor process such that each has a transistor formed within the diffusion region of the substrate, where each transistor has a source, a drain, and a gate.

60. The '633 Accused Products have a metal layer including a power rail disposed outside said diffusion region and a pin layer extending from said diffusion region to outside said diffusion region. Each is an integrated circuit fabricated using, for example, TSMC's 16 Nanometer semiconductor process such that each has a metal layer including a power rail, where the power rail is disposed outside the diffusion region. Each has a pin layer extending from the diffusion region to outside the diffusion region.

61. The '633 Accused Products have a contact layer disposed above said substrate and below said metal layer; and a via disposed between said contact layer and said power rail to electrically connect said contact layer to said power rail. Each is an integrated circuit fabricated using, for example, TSMC's 16 Nanometer semiconductor process such that each has a contact layer disposed above the substrate and below the metal layer. Each has a via between the contact layer and the power rail. The via connects the contact layer to the power rail.

62. In the '633 Accused Products said contact layer includes a first length disposed outside said diffusion region and a second length extending from said first length into said diffusion region and electrically connected to said transistor. The contact layer has a first length disposed outside the diffusion region. The contact layer includes a second length extending from

the first length into the diffusion region.  At least some of the second lengths are electrically connected to at least some of the transistors.

63.     On information and belief, Google actively, knowingly, and intentionally induces infringement of one or more claims of the '633 patent under 35 U.S.C. § 271(b) by actively encouraging others to import into the United States, and/or make, use, sell, offer to sell in the United States, '633 Accused Products or products containing the infringing semiconductor components of the '633 Accused Products.  For example, Google actively promotes the sale, use, and importation of the '633 Accused Products in marketing materials, technical specifications, data sheets, web pages on its website (e.g., coral.withgoogle.com), news and announcements, training tutorials, code examples, development and design tools, and through its sales and distribution channels that encourage infringing uses, sales, offers to sell, and importation of the '633 Accused Products.  On information and belief, Google supplies customers with '633 Accused Products so that they may be used, sold, or offered for sale by those customers.  For example, Google provides links to sellers of its products, such as Mouser Electronics, Inc., on its website.

64.     By at least August 26, 2019, Globalfoundries disclosed, by sending a letter and filing this Complaint, the existence of the '633 patent and identified at least some of Google's and others' activities that infringe the '633 patent.  Thus, based on this disclosure, Google had knowledge of the '633 patent and that its activities infringe the '633 patent since at least August 26, 2019.  Based on Globalfoundries' disclosures, Google has also known or should have known since at least August 26, 2019 that its customers, distributors, and other purchasers of the '633 Accused Products are infringing the '633 patent at least because Google has known that it is infringing the '633 patent.

65.     Other entities directly infringe the '633 patent by using, offering to sell, and/or selling the '633 Accused Products in the United States and by importing the '633 Accused Products into the United States.  For example, Mouser Electronics, Inc. has infringed and continues to infringe one or more claims of the '633 patent, including at least claim 1, literally or under the doctrine of equivalents at least under 35 U.S.C. § 271(a) by importing into the United States, and/or selling, and/or offering for sale in the United States, without any authority or license, at least some '633 Accused Products.

66.     Globalfoundries has suffered and continues to suffer damages as a result of Defendant's infringement of the '633 patent.

67.     Defendant's continuing acts of infringement are a basis of consumer demand for the '633 Accused Products.  Defendant's continuing acts of infringement are therefore irreparably harming and causing damage to Globalfoundries, for which Globalfoundries has no adequate remedy at law, and will continue to suffer such irreparable injury unless Defendant's continuing acts of infringement are enjoined by the Court.  The hardships that an injunction would impose are less than those faced by Globalfoundries should an injunction not issue.  The public interest would be served by issuance of an injunction.

### COUNT IV
### INFRINGEMENT OF THE '167 PATENT

68.     Globalfoundries incorporates by reference the allegations set forth in paragraphs 1 through 67 as though fully set forth herein.

69.     On information and belief, Google has infringed and continues to infringe and/or has induced infringement of one or more claims of the '167 patent, including at least claim 1, literally or under the doctrine of equivalents, by importing into the United States and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, integrated

circuits manufactured by TSMC using, for example, TSMC's 16 Nanometer technology and products containing these integrated circuits (collectively, the "'167 Accused Products"), in violation of 35 U.S.C. § 271. The '167 Accused Products include at least Google's Edge TPU development board sold under the Coral Brand, and its edge TPU fabricated using, for example, TSMC's 16 Nanometer process.

70.     On information and belief, Google has directly infringed and continues to infringe one or more claims of the '167 patent, including at least claim 1, literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering to sell in the United States, without authority or license, '167 Accused Products, in violation of 35 U.S.C. § 271(g). On information and belief, Google imports '167 Accused Products into the United States for sales and distribution to customers located in the United States. On information and belief, Google uses the '167 Accused Products through at least testing, evaluations, and development. On information and belief, Google offers for sale and/or sells '167 Accused Products in the United States. For example, Google maintains the coral.withgoogle.com website where it provides links to purchase the '167 Accused Products. This website provides links to resellers, such as Mouser Electronics, Inc., where customers can purchase the '167 Accused Products.

71.     The '167 Accused Products are manufactured by a process including all of the limitations of at least claim 1 of the '167 patent. Specifically, claim 1 of the '167 patent claims a method of forming a metal layer interface between a copper layer and a silicon nitride layer, the method comprising: providing a metal organic gas over a copper layer; forming a metal layer from reactions between the metal organic gas and the copper layer; and depositing a silicon nitride layer

over the metal layer and copper layer, the metal layer providing an interface adhesion between the silicon nitride layer and the copper layer.

72.     The '167 Accused Products are made by a method of forming a metal layer interface between a copper layer and a silicon nitride layer.  TSMC's manufacture of the '167 Accused Products results in a metal layer interface.  The metal layer interface is between a copper layer and a silicon nitride layer.  On information and belief, TSMC uses a selective CVD cobalt process to perform this method.

73.     During the manufacture of the '167 Accused Products a metal organic gas is provided over a copper layer.  TSMC's manufacture of the '167 Accused Products provides a metal organic gas over a copper layer.  On information and belief, TSMC uses a selective CVD cobalt process to perform this method.

74.     During the manufacture of the '167 Accused Products, a metal layer is formed from reactions between the metal organic gas and the copper layer.  TSMC's manufacture of the '167 Accused Products forms a cobalt metal layer from reactions between the metal organic gas and the copper layer.  On information and belief, TSMC uses a selective CVD cobalt process to perform this method.

75.     During the manufacture of the '167 Accused Products, a silicon nitride layer is deposited over the metal layer and the copper layer.  On information and belief, TSMC's manufacture of the '167 Accused Products deposits a silicon nitride layer over the metal layer and the copper layer.  On information and belief, TSMC uses a selective CVD cobalt process to perform this method.

76.     During the manufacture of the '167 Accused Products, the metal layer provides an interface adhesion between the silicon nitride layer and the copper layer.  TSMC's manufacture of

the '167 Accused Products provides an interface adhesion between the silicon nitride layer and the copper layer.  On information and belief, TSMC uses a selective CVD cobalt process to perform this method.

77.    On information and belief, the '167 Accused Products are neither materially changed by subsequent processes nor become trivial and nonessential components of another product.

78.    On information and belief, Google actively, knowingly, and intentionally induces infringement of one or more claims of the '167 patent under 35 U.S.C. § 271(b) by actively encouraging others to import into the United States, and/or use, sell, and/or offer to sell in the United States, '167 Accused Products or products containing the infringing semiconductor components of the '167 Accused Products in the United States.  For example, Google actively promotes the sale, use, and importation of the '167 Accused Products in marketing materials, technical specifications, data sheets, web pages on its website (e.g., coral.withgoogle.com), news and announcements, training tutorials, code examples, development and design tools, and through its sales and distribution channels that encourage infringing uses, sales, offers to sell, and importation of the '167 Accused Products.  On information and belief, Google supplies customers with '167 Accused Products so that they may be used, sold, or offered for sale by those customers. For example, Google provides links to sellers of its products, such as Mouser Electronics, Inc., on its website.

79.    By at least August 26, 2019, Globalfoundries disclosed, by sending a letter and filing this Complaint, the existence of the '167 patent and identified at least some of Google's and others' activities that infringe the '167 patent.  Thus, based on this disclosure, Google had knowledge of the '167 patent and that its activities infringe the '167 patent since at least August

26, 2019.  Based on Globalfoundries' disclosures, Google has also known or should have known since at least August 26, 2019 that its customers, distributors, and other purchasers of the '167 Accused Products are infringing the '167 patent at least because Google has known that it is infringing the '167 patent.

80.     Other entities directly infringe the '167 patent by using, offering to sell, and/or selling the '167 Accused Products in the United States and by importing the '167 Accused Products into the United States.  For example, Mouser Electronics, Inc. has infringed and continues to infringe one or more claims of the '167 patent, including at least claim 1, literally or under the doctrine of equivalents at least under 35 U.S.C. § 271(g) by importing into the United States, and/or selling, and/or offering for sale in the United States, without any authority or license, at least some '167 Accused Products.

81.     Globalfoundries has suffered and continues to suffer damages as a result of Defendant's infringement of the '167 patent.

82.     Defendant's continuing acts of infringement are a basis of consumer demand for the '167 Accused Products.  Defendant's continuing acts of infringement are therefore irreparably harming and causing damage to Globalfoundries, for which Globalfoundries has no adequate remedy at law, and will continue to suffer such irreparable injury unless Defendant's continuing acts of infringement are enjoined by the Court.  The hardships that an injunction would impose are less than those faced by Globalfoundries should an injunction not issue.  The public interest would be served by issuance of an injunction.

**COUNT V**
**INFRINGEMENT OF THE '966 PATENT**

83.     Globalfoundries incorporates by reference the allegations set forth in paragraphs 1 through 82 as though fully set forth herein.

25

84.     On information and belief, Google has infringed and continues to infringe and/or has induced infringement of one or more claims of the '966 patent, including at least claim 12, literally or under the doctrine of equivalents, by importing into the United States and/or using and/or selling and/or offering for sale in the United States, without authority or license, integrated circuits manufactured by TSMC using, for example, TSMC's 16 Nanometer technology and products containing these integrated circuits (collectively, the "'966 Accused Products"), in violation of 35 U.S.C. § 271.  The '966 Accused Products include at least Google's Edge TPU development board sold under the Coral Brand, and its edge TPU fabricated using, for example, TSMC's 16 Nanometer process.

85.     On information and belief, Google has directly infringed and continues to infringe one or more claims of the '966 patent, including at least claim 12, literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering to sell in the United States, without authority or license, '966 Accused Products, in violation of 35 U.S.C. § 271(a) and (g).  On information and belief, Google imports '966 Accused Products into the United States for sales and distribution to customers located in the United States.  On information and belief, Google uses the '966 Accused Products through at least testing, evaluations, and development.  On information and belief, Google offers for sale and/or sells '966 Accused Products in the United States.  For example, Google maintains the coral.withgoogle.com website where it provides links to purchase the '966 Accused Products.  This website provides links to resellers, such as Mouser Electronics, Inc., where customers can purchase the '966 Accused Products.

86.     The '966 Accused Products meet all the limitations of at least claim 12 of the '966 patent.  Specifically, claim 12 of the '966 patent claims a structure, comprising: a wire embedded

in a dielectric layer on a semiconductor substrate, said wire comprising a copper core and an electrically conductive liner on sidewalls and a bottom of said copper core, said copper core and said electrically conductive liner exposed at a top surface of said dielectric layer; a metal cap on an entire top surface of said copper core; a dielectric cap only over (i) said metal cap, (ii) any exposed portions of said liner, and (iii) on said top surface of said dielectric layer; and wherein an interface between said copper core and said metal layer does not contain oxygen.

87.     The '966 Accused Products are structures.  Each is an integrated circuit fabricated using, for example, TSMC's 16 Nanometer semiconductor process.

88.     The '966 Accused Products have a wire embedded on a dielectric layer on a semiconductor substrate.  Each is an integrated circuit fabricated using, for example, TSMC's 16 Nanometer semiconductor process such that there is a dielectric layer on a semiconductor substrate.  For example, at least some of the '966 Accused Products have a SiOC dielectric layer on a semiconductor substrate.  The '966 Accused Products have a wire embedded in the dielectric layer as part of, for example, the M1-M3 interconnects.

89.     The '966 Accused Products have a wire that has a copper core and an electrically conductive liner on sidewalls and a bottom of said copper core.  Each contains wires with copper cores, for example as part of the M1-M3 interconnects.  At least some of those wires have an electrically conductive liner including, for example, tantalum and cobalt, on the sidewalls and bottom of the copper core.  Tantalum and cobalt are electrically conductive.

90.     The '966 Accused Products have a wire that has a copper core and an electrically conductive liner exposed at the top surface of said dielectric layer.  In the '966 Accused Products, in at least some instances, the copper core, electrically conductive liner including cobalt and

tantalum are exposed at the top surface of the dielectric layer of, for example, at least one of the M1-M3 interconnect layers.

91.     The '966 Accused Products have a metal cap on an entire top surface of said copper core.  In the '966 Accused Products, at least some the wires have a cobalt cap on the entire top surface of the copper core.  Cobalt is a metal.

92.     The '966 Accused Products have a dielectric cap only over said metal cap, any exposed portions of said liner, and on said top surface of said dielectric layer.  In the '966 Accused Products at least some of the wires have, for example, a SiNC dielectric cap that covers only the cobalt metal cap, any exposed portions of the conductive liner, and the top surface of the SiOC dielectric layer.

93.     The '966 Accused Products have a structure wherein an interface between said copper core and said metal layer does not contain oxygen.  In the '966 Accused Products, the interface between the copper core and the cobalt cap of at least some of the wires contains no oxygen.

94.     On information and belief, the '966 Accused Products are neither materially changed by subsequent processes nor become trivial and nonessential components of another product.

95.     On information and belief, Google actively, knowingly, and intentionally induces infringement of one or more claims of the '966 patent under 35 U.S.C. § 271(b) by actively encouraging others to import into the United States, and/or make, use, sell, and/or offer to sell in the United States, '966 Accused Products or products containing the infringing semiconductor components of the '966 Accused Products.  For example, Google actively promotes the sale, use, and importation of the '966 Accused Products in marketing materials, technical specifications,

data sheets, web pages on its website (e.g., coral.withgoogle.com), news and announcements, training tutorials, code examples, development and design tools, and through its sales and distribution channels that encourage infringing uses, sales, offers to sell, and importation of the '966 Accused Products.  On information and belief, Google supplies customers with '966 Accused Products so that they may be used, sold, or offered for sale by those customers.  For example, Google provides links to sellers of its products, such as Mouser Electronics, Inc., on its website.

96.     By at least August 26, 2019, Globalfoundries disclosed, by sending a letter and filing this Complaint, the existence of the '966 patent and identified at least some of Google's and others' activities that infringe the '966 patent.  Thus, based on this disclosure, Google had knowledge of the '966 patent and that its activities infringe the '966 patent since at least August 26, 2019.  Based on Globalfoundries' disclosures, Google has also known or should have known since at least August 26, 2019 that its customers, distributors, and other purchasers of the '966 Accused Products are infringing the '966 patent at least because Google has known that it is infringing the '966 patent.

97.     Other entities directly infringe the '966 patent by using, offering to sell, and/or selling the '966 Accused Products in the United States and by importing the '966 Accused Products into the United States.  For example, Mouser Electronics, Inc. has infringed and continues to infringe one or more claims of the '966 patent, including at least claim 12, literally or under the doctrine of equivalents at least under 35 U.S.C. § 271(a) and (g) by importing into the United States, and/or selling, and/or offering for sale in the United States, without any authority or license, at least some '966 Accused Products.

98.     Globalfoundries has suffered and continues to suffer damages as a result of Defendant's infringement of the '966 patent.

99.     Defendant's continuing acts of infringement are a basis of consumer demand for the '966 Accused Products.  Defendant's continuing acts of infringement are therefore irreparably harming and causing damage to Globalfoundries, for which Globalfoundries has no adequate remedy at law, and will continue to suffer such irreparable injury unless Defendant's continuing acts of infringement are enjoined by the Court.  The hardships that an injunction would impose are less than those faced by Globalfoundries should an injunction not issue.  The public interest would be served by issuance of an injunction.

## JURY DEMAND

100.    Plaintiff demands a jury trial as to all issues that are triable by a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for relief as follows:

(a)     Judgment that Defendant is liable for infringement and/or inducing the infringement of one or more claims of each of the Asserted Patents;

(b)     An Order permanently enjoining Defendant and its respective officers, agents, employees, and those acting in privity or in active concert or participation with it, from further infringement of the Asserted Patents;

(c)     Compensatory damages in an amount according to proof, including lost profits, and in any event no less than a reasonable royalty;

(d)     Pre-judgment interest;

(e)     Post-judgment interest;

(f)     Attorneys' fees based on this being an exceptional case pursuant to 35 U.S.C. § 285, including pre-judgment interest on such fees;

(g)     An accounting and/or supplemental damages for all damages occurring after any discovery cutoff and through final judgment;

(h)     Costs and expenses in this action; and

(i)     Any further relief that the Court deems just and proper.

Dated:  August 26, 2019                    Respectfully submitted,

                                           */s/ Raymond W. Mort, III*
                                           Raymond W. Mort, III
                                           Texas State Bar No. 00791308
                                           raymort@austinlaw.com

                                           **THE MORT LAW FIRM, PLLC**
                                           100 Congress Ave, Suite 2000
                                           Austin, Texas 78701
                                           Tel/Fax: (512) 865-7950

                                           **ATTORNEYS FOR PLAINTIFF**
                                           **GLOBALFOUNDRIES U.S. INC**